UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LIONEL WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| JOHN E. POTTER, | § | SA-09-CV-1023 OG (NN) |
| United States Postmaster General, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

TO:   Honorable Orlando Garcia
      United States District Judge

This report and recommendation addresses the motion to dismiss filed by defendant John E. Potter, United States Postmaster General.[1] In the motion, Potter asked the court to dismiss plaintiff Lionel Williams's claims. I have jurisdiction to issue this report and recommendation under 28 U.S.C. § 636(b) and the district court's order referring all pretrial matters to me for disposition by order or recommendation, where statute constrains my authority.[2] The district court has jurisdiction over this case because it involves questions of federal law.

**Nature of the case**. Williams characterized himself as a 57-year-old, African-American male, with multiple impairments, who was forced to retire because of harassment and retaliation.[3] Williams complained about employment discrimination based on age, race, gender

---

[1]Docket entry # 4.

[2]Docket entry # 17.

[3]Docket entry # 1.

and disability; retaliation based on a prior EEO claim; hostile work environment; and harassment.  To the extent that Williams complained about gender discrimination,[4] that allegation is likely a typographical error.  Williams complained about race discrimination in his administrative claim,[5] but alleged gender discrimination in his complaint.  Potter moved to dismiss the gender-discrimination claim because Williams did not administratively exhaust the claim, speculating that the allegation was a mistake and that Williams intended to allege race discrimination.  Although Williams did not address this argument in his response to the motion to dismiss, or amend his complaint to correct the mistake, Williams's complaint is reasonably construed to allege race discrimination because that it what he complained about in his administrative claim and because he repeatedly described himself as an African American in his pleadings in this case.  To the extent that Williams intended to complain about gender discrimination, he did not exhaust that claim because he did not include gender discrimination in his administrative claim.

**The administrative claim**.  The record contains references to two administrative claims: the first claim is 4G-780-0002-08; the second claim is 4G-780-0107-08.  This lawsuit concerns the second claim—4G-780-0107-08.  In that claim, Williams alleged: "discrimination based on Race (Black), Age (55), Physical Disability (Job related) and Retaliation (for prior EEO activity) when on 12/11/07 he was directed off the workroom floor; on 12/12/07 he became aware he was issued 27.84 [hours] of Leave without pay; on 1/9/08 and 1/15/08 he was questioned regarding an incident on 12/6/07; and on 1/22/08 he became aware he was denied the opportunity to bid on

---

[4] Docket entry # 1, ¶ 47.

[5] Docket entry # 4, exh. 1.

all positions in an in house bidding."[6] The "prior EEO activity" refers to the first claim—4G-780-0002-08. This lawsuit does not involve the allegations in that claim, except that the claim serves as the basis for Williams's retaliation claim.

**Whether Williams alleged an adverse employment action**. Potter maintains the claims should be dismissed because Williams failed to allege an adverse employment action. To the extent that the argument cannot be resolved without referring to documents, Potter asked for summary judgment on the same basis.[7] All of Williams's claims require him to show he experienced an adverse employment action.[8] "'Adverse employment actions include only

---

[6]*Id*.

[7]Fed. R. Civ. P. 12(e) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

[8]*Aryain v. Wal-Mart Stores*, 534 F.3d 473, 484 (5th Cir. 2008) (" To establish a prima facie case of retaliation, [the plaintiff] must show that: (1) she participated in an activity protected by Title VII; (2) *her employer took an adverse employment action against her*; and (3) a causal connection exists between the protected activity and *the materially adverse action*.") (italics added); *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (stating that the plaintiff alleging race discrimination, must "first establish a prima facie case of discrimination, which requires a showing that the plaintiff (1) is a member of a protected group; (2) was qualified for the position at issue; (3) *was discharged or suffered some adverse employment action by the employer*; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group" and that a plaintiff alleging retaliation under Title VII must establish a prima facie case of retaliation by establishing "that: (1) he participated in an activity protected by Title VII; (2) his employer took *an adverse employment action against him*; and (3) *a causal connection exists between the protected activity and the adverse employment action*.") (italics added); *Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000) (explaining that the first three elements of a prima facie case of age discrimination under the AEDA and discrimination under Title VII are identical, and that the plaintiff proves the fourth element by showing that he was replaced by someone outside the protected class, replaced by someone younger, otherwise discharged because of his age); *Hamilton v. Sw. Bell Telephone Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998) (instructing that a prima facie case for disability discrimination requires the plaintiff to show: "(a) he has a disability; (b) he is a qualified individual for the job in question; and (c) *an adverse employment decision was made because of his disability*") (italics added).

ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.' 'Title VII does not . . . address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.'"[9] "An employer's action does not rise to the level of an 'adverse employment action' when it fails to have more than 'mere tangential effect on a possible future ultimate employment decision.'"[10]

      The conduct Williams complained about does not rise to the level of an adverse employment action because the conduct either had no tangential effect, or a mere tangential effect, on a possible future ultimate employment decision. Williams complained about being directed off the workroom floor on December 11, 2007, but his summary-judgment evidence showed that station manager Puga directed Williams to leave the workplace after Williams refused to join Puga in his office to receive work-related paperwork. Williams refused to meet with Puga without a union steward, even though no union steward was available.[11] Directing an employee to leave the workplace after the employee refuses to follow a manager's instruction does not rise to the level of an adverse employment action.[12]

      Williams complained about learning on December 12, 2007 that he was charged 27.84 hours of leave without pay. The summary-judgment evidence shows that Puga directed

---

[9]*Ackel v. Nat'l Comm.*, 339 F.3d 376, 385 (5th Cir. 2003) (internal citations omitted).

[10]*Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001).

[11]Docket entry # 9, p. 5.

[12]*See Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997) ("[V]erbal threat of being fired, the reprimand for not being at her assigned station, a missed pay increase, and being placed on 'final warning', do not constitute 'adverse employment actions' because of their lack of consequence.").

supervisor Moya to charge the time Williams did not work as leave without pay because Williams had not completed a leave slip.[13] The summary-judgment evidence also shows that supervisor Gagliardi changed the leave without pay to sick leave at Williams's request.[14] Even if Puga erroneously directed Moya to code Williams's time-not-worked as leave without pay, that conduct did not rise to the level of an adverse employment action because it had no effect on Williams's compensation.[15]

Williams complained about being questioned on January 9, 2008 and January 15, 2008 about a December 6, 2007 incident.[16] Williams contends that on December 6, 2007 supervisor Jackson returned a workplace injury report to him by throwing it at him.[17] The alleged incident is the basis of a workplace violence complaint that was Williams's first EEO claim.[18] Being questioned during the course of an investigation does not rise to the level of an adverse employment action, especially considering Williams's claim triggered the investigation.[19]

Finally, Williams complained that he was denied the opportunity to bid on all positions in

---

[13] Docket entry # 9, exh. , p. 1 & exh. 9, p. 1.

[14] Docket entry # 9, exh. 6, p. 5. *See also* docket entry # 4, exh. 9.

[15] *See Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (neither being placed on paid leave or a rescinded reprimand rises to the level of adverse employment action).

[16] Docket entry # 1, ¶¶ 27-30.

[17] Docket entry # 1, ¶ 18.

[18] Docket entry # 9, exh. 1, p. 8; exh. 5, p. 2 & exh. 6, p. 6.

[19] *See Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir.1998) (stating that false accusations, verbal reprimands, and investigations do not constitute adverse employment actions).

an in-house bidding.[20]  Manager Puga's description of the bidding process is helpful in understanding Williams's allegation:

> We were undergoing in-house bidding of the clerk jobs.  The Rio Grande District Function 4 team had made recommendations for job realignment.  After the jobs were defined, the Area Manager and Postmaster of San Antonio had several meetings with Labor Relations and the APWU on the new Jo[bs].  There were 3 to 4 jobs that were a direct match with the clerk incumbent and therefore those jobs were not put into the line of polling.  As polling began clerks would select their job, and it would be removed from the list. . . .  The clerks were not given the opportunity to see who selected what job, and only were allowed to look at [t]he list of remaining jobs.  After the polling the union filed a grievance that the polling was improper.  The clerks should have been able to see all the jobs, and if a senior clerk was qualified for any job on the list, then they could "bump" the junior person from the position.  The grievance was resolved, and all the jobs and clerks were re-polled.[21]

The re-bidding process was conducted in February 2008.  By that time, Williams's application for medical retirement had been approved.[22]  To the extent that Williams was one of the clerks who bid on remaining jobs, rather than viewing all jobs, that matter was resolved by the re-polling.  Upon re-polling Williams chose not to bid on a new job because his medical retirement had been approved.[23]  Being denied the opportunity to bid on all positions in an in-house bidding does not rise to the level of an adverse employment action where the process was redone and Williams chose not to bid.

In response to Potter's argument that he did not experience an adverse employment

---

[20]Docket entry # 1, ¶¶ 31-37.

[21]Docket entry # 9, exh. 5, ¶ 7.

[22]Docket entry # 9, exh. 10 (finding Williams disabled for the position of distribution clerk and approving medical retirement on Jan. 15, 2008).

[23]Docket entry # 9, exh. 5, ¶ 7 & exh. 6, p. 5, ¶ 7.

action, Williams argued that he was forced to retire; that is, he was constructively discharged. There are at least two reasons this argument fails. First, Williams did not exhaust his constructive-discharge claim. As a precondition to filing suit in federal court, a federal employee claiming discrimination must exhaust his administrative remedies.[24] To exhaust a claim, an employee must notify an EEO counselor within thirty days of the date when the employee knows or reasonably should know of the discriminatory event or personnel action.[25] The "discriminatory event or personnel action" relevant to Williams's constructive discharge claim is the date Williams applied for medical retirement, because he would have decided by then that he was forced to retire "as a result of the continued harassment and subjection to hostile working environment which . . . adversely impacted and exacerbated his medical conditions."[26]

Williams's application for medical retirement was approved on January 15, 2008.[27] Williams requested pre-complaint processing on January 24, 2008; he filed his formal claim on May 7, 2008.[28] Thus, Williams already knew or reasonably should have known that his medical conditions had been adversely impacted and exacerbated by the alleged continued harassment and subjection to hostile working environment at the time he sought EEO counseling. Had Williams believed that he was forced to retire because of discrimination and harassment by his employer as he now alleges, he would have logically included that allegation in his claim. But

---

[24]*Randel v. U.S. Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998).

[25]*Pacheco v. Rice*, 966 F.2d 904, 906 (5th Cir. 1992).

[26]Docket entry # 3, ¶ 46.

[27]Docket entry # 9, exh. 6.

[28]Docket entry # 9, exh. 1, p. 2 (chronology).

Williams did not allege that he had been forced to retire in his claim. Nor did he seek to amend his claim after the agency issued its decision partially accepting and partially dismissing Williams's claim. Williams took the position that he was forced to retire after the agency stated that no evidence showed that he was subjected to an adverse employment action.

Williams maintained that he exhausted the constructive-discharge allegation because he stated that he was forced to retire when he asked the administrative law judge (ALJ) to consider dismissed claims in his administrative hearing.[29] Williams, however, did not ask to amend his claim. Because Williams asked only that the ALJ consider dismissed claims, the inclusion of dismissed claims—not the inclusion of an unexhausted claim or the amendment of his claim—was before the ALJ. Williams's statement was insufficient to satisfy the exhaustion requirement. Williams purports to have been forced to retire during the pendency of his administrative proceeding, but he had already decided to retire when he filed his claim. Contrary to Williams's argument, his authorities[30] do not negate the exhaustion requirement or demonstrate that Williams satisfied the exhaustion requirement.

---

[29] Docket entry # 9, exh. 3, p. 7-8.

[30] *Robinson v. Dalton*, 107 F.3d 1018, 1026 (3d Cir. 1997) (remanding for the district court to consider whether there was enough overlap between the plaintiff's three EEOC claims and his fourth claim about discharge such that the time for filing the discharge claim should be equitably tolled); *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 399 (3d Cir. 1976) (stating that the plaintiff's additional charges of sex discrimination, implicating the seniority rights of women in the machine shop division, were fairly considered explanations of the original charge complaining about the treatment of women in the shipping department; the additional charges were filed prior to EEOC conciliation discussions); *Khalil v. Rohm & Haas Co.*, No. 05-CV-03396, 2005 U.S. Dist. LEXIS 29125 (E.D. Pa. Nov. 17, 2005) (determining that the plaintiff administratively exhausted her claim about the disclosure of confidential medical information because her complaints and subsequent amendments to the EEOC referenced an incident report which formed the basis of her about the alleged disclosure).

To the extent contrary authority would permit Williams to pursue the constructive discharge claim,[31] the claim fails to state a claim upon which relief may be granted.

To show constructive discharge, an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign. . . .Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not.[32]

"A plaintiff is not required to demonstrate that the employer specifically intended to force his resignation, but '[c]onstructive discharge requires a greater degree of harassment than that required by a hostile environment claim.'"[33]

A reasonable person would not be compelled to retire based on the conduct that Williams alleged.[34] He was not demoted. His salary was not reduced. He job responsibilities were not

---

[31]*See Harris v. Parker College of Chiropractic,* 286 F.3d 790, 795 (5th Cir. 2002) (stating in a case involving non- federal employees, that "it is sufficient if in the EEOC charge the claimant asserts the facts that are the basis for the legal claims;" even though the plaintiffs did not include constructive discharge in their EEOC charge, the claim was premised on the same facts as the claims which were described in the EEOC complaint).

[32]*Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292, 297 (5th Cir.1994).

[33]*Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 167 (5th Cir. 2007). *See also Harvill v. Westward Comm.*, 433 F.3d 428, 440 (5th Cir. 2005).

[34]*See, e.g., McCoy*, 492 F.3d at 558 (determining that police officer's complaint that defendant employer counseled her for workplace horseplay, took her gun and badge, and placed her on administrative leave did not meet the established standard for a constructive discharge); *Keelan v. Majesco Software*, 407 F.3d 332, 343 (5th Cir. 2005) (rejecting the argument that the plaintiff was forced to resign because his employer implemented a work-from-the-office policy, forced salespersons to work in a cubicle-type "bullpen" office space, and implemented a new commission structure); *Haley v. Alliance Compressor*, 391 F.3d 644, 652 (5th Cir. 2004) (finding no constructive discharge in a FMLA case where the plaintiff complained about being embarrassed by plant

reduced. He was not reassigned to menial or degrading work. He was not reassigned to work under a younger supervisor. He was not offered retirement on terms that would make him worse off. The complained-about conduct does not rise to the level of badgering, harassment, or humiliation calculated to encourage retirement. For these reasons, the constructive discharge claim—whether exhausted or unexhausted—fail to state a claim upon which relief may be granted.

**Recommendation**: I recommend GRANTING Potter's motion to dismiss (docket entry # 9) and DISMISSING this case for failure to state a claim. Because this recommendation relies, in part, on documentary evidence, I recommend treating Potter's motion to dismiss under Rule 56.[35] Although Williams insists that he is entitled to discovery, permitting discovery will not change Williams's allegations. He relies on specific conduct that does not rise to the level of an adverse employment action. For that reason, his claims fail to state a claim upon relief may be granted. Discovery will not change that result.

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt

---

manager's sarcastic comment and her peers' response during the late-noticed meeting, and having her work micro-managed); *Woods v. Delta Beverage Group*, 274 F.3d 295, 301 (5th Cir. 2001) ("A reasonable woman experiencing the type of harassment complained of by [the plaintiff] would not have felt compelled to resign. A reasonable woman would have felt compelled to report [her co-worker's advances] to her supervisors.").

[35]Fed. R. Civ. P. 12(e) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[36] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[37] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[38]

    **SIGNED** on July 19, 2010.

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[36] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[37] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[38] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).